EDWARD J. HAGARTY v. PHOENIX INSURANCE COMPANY.
EDWARD J. HAGARTY v. MILWAUKEE MECHANICS INSURANCE COMPANY.[1]

March 27, 1925.

Nos. 24,325, 24,326.

**When verdict for fire loss should not be set aside.**
1. The verdict for a fire loss based upon the positive testimony of plaintiff as to the amount of the stock of goods lost in the fire, approved by the trial court, should not be set aside by this court upon mere suspicious inferences which may be drawn from the facts and

[1] Reported in 203 N. W. 50.

circumstances connected with the fire and its results, such inferences being peculiarly matters for the jury's consideration in arriving at a verdict.

**Refusal of new trial on ground of misconduct of counsel sustained.**

2. There was no abuse of judicial discretion in refusing to grant a new trial on the ground of the alleged misconduct of counsel for the prevailing party.

*Headnote 1.  See Appeal and Error, 4 C. J. p. 865, § 2839 (1926 Anno).

Headnote 2.  See New Trial, 29 Cyc. p. 1009.

Two actions in the district court for St. Louis county to recover on insurance policies. The cases were tried together before Freeman, J., and a jury which returned verdicts in favor of plaintiff. From orders denying their motions for judgment notwithstanding the verdicts or for a new trial, defendants took separate appeals. Affirmed.

*George H. Spear*, for appellants.

*Victor L. Power* and *John E. Hario*, for respondent.

HOLT, J.

The two cases, tried together and argued here as one, were brought to recover a fire loss covered by policies issued by defendants. Plaintiff had verdicts totalling $1,687.30, and defendants appeal from the order denying a new trial.

The property insured, according to plaintiff's testimony, consisted of 11,000 cigars in boxes of 25 and 50 cigars each, packed in two wooden boxes, the largest being about 3 feet long by 2 feet wide and 18 inches deep. The claimed value was $887.50. He also testified that there were paper cartons, each containing 50 boxes of 10 packages, having 20 cigarettes to a package, a total of 65,000 cigarettes, worth $450. Then he claimed there was $350 worth of smoking tobacco in tin, paper, and cloth packages, packed in paper cartons similar to those containing the cigarettes. The boxes and cartons mentioned were stored in a newly-built garage in Hibbing, Minnesota, 14 feet wide by 16 feet long, frame con-

struction, studding and rafters exposed, and stuccoed on the outside. The floor was concrete, there were double doors toward the front end and a single door on the side near the alley end. Each door had a window, covered on the inside with cardboard. The goods were piled on the floor near the southeast corner, six or eight inches from the wall.

Plaintiff left the place in the forenoon October 20, 1922, for Duluth. At 9:20 in the evening of the same day fire was discovered in the garage, and a fire alarm given. When the fire department arrived no fire was visible from the outside, but, upon the doors being forced open, the inside burst into flame. After about 15 minutes operation of the chemical engine, using some 35 gallons extinguishing fluid, the fire was put out. What remained was shoveled or carried out into the alley. On the side of the garage nearest to the goods, a hole about 3 feet long and 20 inches wide was burned through the boards and stucco. There was testimony that some of the rafters were somewhat charred, and the composition shingles so damaged that the roof had to be repaired, also the stucco loosened and cracked in places. The windows in the doors were not broken. The debris from the fire was variously estimated as ranging from a couple of barrels to a ton and a half. The fireman in charge testified that after the fire was extinguished there was not much left except "a bunch of ashes, that is all, and rubbish in there." That it was the firemen's duty to clean it out and they did so. No witness testified to seeing any unbroken packages or whole cigars, though remnants of tobacco and cigar stumps had been noticed in the rubbish afterwards carted away.

That there was fire which destroyed goods covered by the policies was conclusively established. There was some evidence of destroyed cigars and tobacco in the debris. Defendants offered no testimony. The sole effort of their counsel, at the trial, was to cross-examine plaintiff's witnesses for inferences and facts upon which to persuade the jury that there was not anywhere near the quantity of stock claimed in the garage when the fire occurred. And the argument here is that the amount and character of the debris and the condition the garage was left in demonstrate to a

certainty the falsity of plaintiff's testimony that he had $1,687 worth of stock or any quantity approaching that amount in value, for, if so much had been consumed, the fire would have had more effect on the garage, and there would have been more remnants from cigars, cigarettes and tobacco in the debris and less of the cartons in which they were packed. Whether the results of the fire demonstrated plaintiff to have testified falsely to the stock on hand was peculiarly a jury question. If he falsified, it was done knowingly and deliberately. He was quite familiar with what goods he had in the garage. He fortified his recollection with invoices from the wholesale house where the goods were bought, and the credits given for those he had sold. It cannot be said that there is anything in the record which satisfactorily demonstrates that plaintiff committed perjury when testifying to the goods on hand before the fire. How long the fire had smoldered before noticed, to what extent, in a place where air was practically excluded, fire would consume goods of this nature, whether the tobacco as packed would disappear more rapidly than the paper cartons inclosing it, were all matters for a jury's consideration. The fireman in charge of the department gave his opinion that the fire had smoldered a long time before discovered. Add to that the effect of 35 gallons of chemicals forced against the burning mass, the shoveling out and carrying out of the debris in the night-time, with no one present interested enough in ascertaining whether or not anything could be salvaged. The jury were the ones to determine to what extent the witnesses who were present that night at the fire or who thereafter noticed the debris had occasion to make accurate observations. The firemen were intent upon getting the smoldering mass out of the garage, and whether there were boards, or boxes or remnants thereof, was of no particular interest to them. The ashes from a fire like this, and extinguished in the manner it was, could not have been of very noticeable amount. We think the quantity of goods lost by the fire was a pure question of fact and the jury's decision thereon should stand, approved as it has been by the trial court. It is not for an appellate court to set aside such a verdict upon mere suspicious inferences.

Misconduct of plaintiff's counsel is also assigned as ground for a new trial. Because defendants offered no testimony, counsel for plaintiff argued to the jury that the defense had been abandoned. He persisted in such argument against objection made by defendants, until the court ruled the argument improper. The argument of abandonment of a defense was hardly fair, considering the extreme diligence and resourcefulness of defendant's counsel in eliciting by cross-examination of plaintiff's witnesses so minutely every fact which directly or by inference might be urged as tending to disprove the existence of the stock of goods claimed to have been destroyed. But, when the trial court ruled it improper, counsel yielded, at least to such extent that the trial court found no fault in him. Whether misconduct of counsel is such as to warrant a new trial must be largely left to the discretion of the trial court. We see no abuse of judicial discretion in the instant case.

The other assignments of error here have been examined, but do not merit discussion and present no good reason for disturbing the verdict.

Order affirmed.

STONE, J. (dissenting.)

If there is evidence in this record reasonably tending to support a verdict for plaintiff for any substantial amount, it has escaped my search. I dissent because to me the verdict for almost the full amount of plaintiff's claim is manifestly and palpably contrary to the evidence.

The lieutenant in charge of the detachment of firemen which extinguished the blaze and removed the debris from the garage, saw a considerable number of cartons that had not been burned at all or were only partially burned. He saw no unburned or partially burned boxes of cigars or boxes or packages of cigarettes. Notwithstanding the survival of so many of the cardboard cartons, their content of tobacco, cigarettes and cigars had so far disappeared that Lieutenant Archambeau could "not very much" nor "very well" tell that "what was in there was a stock of tobacco," and the tobacco was of the usual kind that is not odorless in the burning.

At that time he did not know "what it was that had burned there on the floor;" nor did he ascertain until "one of the carpenters happened to come around" afterwards and tell him "there had been a lot of tobacco in there." Mr. Gabardi, another fireman, who himself shoveled out most of the rubbish, saw nothing but "ashes and burned paper." He threw out several of the cartons (the contents of which, according to plaintiff, had burned), and "couldn't see' that they had anything in them. In fact he finally put it this way: "No, I can't remember of them having anything in them." *He did not see any cigar boxes at all,* only a few tobacco cans "rattling out while I was pushing the rubbish out." He saw no cigar boxes "burned or partially burned or unburned at all," and no cigars in boxes, packages or otherwise, and nothing indicating there had been any cigars.

Concerning cigars, one of the firemen said that there were a few "butts * * * all white and unraveled apart, possibly enough to fill a hat." No witness saw any trace of the two fair-sized wooden packing boxes in which cigars were said to have been packed. No witness present at the fire saw any evidence, except as already mentioned, that there had been any cigars at all in the place. *No witness testified to the finding of any unburned or partially burned packages or boxes of cigarettes.*

One Jurisich was an eye witness of the "quick stop" made by the firemen. On cross-examination he testified that he saw them carrying out boxes, meaning obviously the pasteboard cartons, and that they were "full." He knew they were full "because every time they throwed them they was opened and scattered around tobacco." *Yet he saw no cigarettes,* "only some Camel cartons." *He saw no cigars,* only some cigar boxes and only "half a dozen or so" of them. Finally, cigars eliminated, his testimony as to the tobacco was reduced to this:

"Q. And there was a little loose tobacco that came out and some of these cartons that had been partially burned as you remember it?

A. Yes, sir."

We then come to this conclusion which must be adopted in order to sustain the verdict: Although the two wooden packing boxes, a few inches away, containing about $900 worth of cigars, were burned to an ash; although all their own contents of cigars and cigarettes and most of the tobacco were almost obliterated; although the smaller and interior packages and boxes of cigarettes had entirely disappeared in smoke and ash, yet the cigarette and tobacco cartons (made of cardboard—not asbestos), the outer containers, probably first and most exposed, survived to a remarkable degree—some of them almost if not quite untouched by flame.

I think there should be a reversal, notwithstanding the absence of any evidence for defendants, because the verdict, as it stands, finds its only support in testimony the truth of which is obviously impossible.